BANGS, receiver, &c. *vs.* BAILEY.

In an action to recover an assessment on a premium note given on effecting an insurance, the plaintiff is not entitled to interest on the amount of the note.

Although the *basis* of all assessments, so long as the right to make them remains, continues to be "the original amount of the deposit note," yet the fund which secures them, whether in note or money, is only the amount remaining after crediting assessments already paid. Hence, "the whole amount of the deposit note" which the directors, in case of default, are authorized by the statute to sue for and recover, should be held to be the actual amount for which the note continues to stand as security.

THIS action was brought upon a premium note given by the defendant to the Genesee Mutual Insurance Company, upon taking a policy of insurance in that company. It was tried at the Genesee circuit, before the court, without a jury, and judgment was ordered for the plaintiff for the amount remaining unpaid on the note, with interest.

*C. Henshaw*, for the appellant.

*H. Wilbur*, for the respondent.

*By the Court*, DAVIS, J. (After considering other points made by the appellant.) The sixth point of the appellant is, that the plaintiff was not entitled to recover interest upon the note. The point has been directly passed upon at gen-

eral term, in the 7th district, in *Bangs* v. *McIntosh*, (23 *Barb.* 591.) We are informed that an eminent jurist, sitting as referee, has, since that decision, held to the contrary; but no case to that effect which has upon us the force of judicial authority, is referred to. A proper respect for the decision of the court in *Bangs* v. *McIntosh* should, in my opinion, lead us to follow that case, so long as it stands unreversed, on this question.

But upon examination of the question *de novo* I am of the opinion that the conclusion in that case, on this point, is entirely sound in principle. A careful study of the provisions and objects of the statute by which the right to recover the whole amount of the note is given, is essential to a just apprehension of this question. The note of each member is in itself a mere deposit. It is not a debt or evidence of debt, but at most a security for the payment of assessments that may be made upon it. The whole amount of the note is never due, or to grow due, unless the assessments upon it shall equal the sum represented by it; and upon the expiration of the term of insurance the note itself, or so much of it as remains unexhausted by assessments, is to be returned to the assured. At no time while the company hold the note, and the assessments are duly paid, does any interest run or accrue upon it. The 10th section of the act (*Laws of* 1836, *ch.* 41, *p.* 44) provides for the assessments, and the consequences of default in their payment. It is in these words: " The directors shall after receiving notice of any loss or damage by fire, sustained by any member, and ascertaining the same, and after the rendition of any judgment as aforesaid, against said company, for loss or damage, settle or determine the sums to be paid by the several members thereof as their respective portions of such loss, and publish the same in such manner as they shall see fit or as the by-laws shall have prescribed, and the sum to be paid by each member *shall always be in proportion to the original amount of his deposit note or notes,* and shall be paid to the treasurer within

thirty days after the publication of said notice ; and if any member shall for the space of thirty days after the publication of such notice neglect or refuse to pay the sum assessed upon him, or his proportion of any loss as aforesaid, in such case the directors may sue for and recover the whole amount of his deposit note or notes with costs of suit, *and the amount thus collected shall remain in the treasury of said company subject to the payment of such losses and expenses as have* [occurred] *or may thereafter occur ;* and the balance, if any, remaining, shall be returned to the party from whom it was collected, on demand, after thirty days from the expiration of the term for which the insurance was made."

By this section and the preceding provisions of the act, a system is created by which a *" deposit* note" is placed by the insured member in the hands of the company as the *" original amount* on which he agrees to be assessed for losses accruing while he is a member." This *"* original amount" is always to be the basis on which he is to be assessed, and such basis is not to be changed, however many assessments may be made and paid, while any portion of the note remains unexhausted. So long as the assessments shall be paid, as provided, the note is to continue to represent this basis, and is to stand as security for the assessment ; but whenever a member neglects or refuses to pay his assessment, he is liable to pay into the treasury the whole amount of his note, and an action may be brought to recover it. For what purpose is this liability imposed ? Evidently to substitute a sum of money as security for future assessments, in lieu of the note. When recovered or paid, this sum is not an amount due and owing ; nor is it a forfeiture or penalty. The only forfeiture incurred by the member is of the right or privilege of having his deposit note remain as his security for future assessments. *He must put up money in place of it.* But this money does not become the property of the company. It goes into its treasury, there to remain a deposit in lieu of the note, and becomes the security for and fund out of which future assess-

Bangs *v.* Bailey.

ments are payable, if any shall be made; *otherwise it is to be wholly returned to the maker of the note.*

When the money is thus received and becomes the security-deposit, all future assessments are still to be made on the member, precisely as though his note remained; that is to say, "*in proportion to the original amount of his deposit note;*" and when made, the sum so assessed is to be taken out of the moneys so in deposit. And if necessary, the company is to proceed till the whole basis of assessment is exhausted. The members whose notes are uncollected, and those from whom the amount of the note has been recovered and deposited, are still to remain on an exactly equal footing in respect to all assessments. Now suppose upon a note of $1000 the whole amount, with $100 interest, has been recovered and put into the treasury. It is manifest all future assessments are to be made upon the basis of the original deposit note, and not upon the $1100, nor upon whatever sum that may be reduced to by payment of past assessments. The result is that the $100 of interest remains unaffected by the assessments and untouched when the original amount of the deposit note is exhausted, and is to be returned to the assured. This is certainly neither the intent nor the policy of the act. They are carefully carried out when for the non-payment of an assessment less than the whole note, the money is by the result of a suit, substituted for the note as security for the payment of further assessments. (*Jones v. Sisson,* 6 *Gray,* 289.)

It is palpable, to my mind, that on non-payment of a partial assessment, the deposit note is not due and owing in the sense of any rule which imposes interest upon a debt; and it is very clear that the company has no right, under the section above cited, to collect and take into their treasury, to await future assessments, a sum out of which no part of such future assessment is to be paid.

It may be said that inequalities would accrue between those who paid their assessments promptly and those who neglected

or refused, unless the latter class were chargeable with interest. But this is an argument against the system itself, and if sound, does not warrant us in changing what the statute has declared. Besides, if true, this inequality would only be a consequence of the election of the company to sue for the recovery of the whole amount of the note, instead of for the assessment. By the 9th section of the act, the company is authorized to sue for any assessment; and it is clear that in such a suit interest would be recoverable on the assessment from the time it fell due. That would be a debt due, and would come within the settled rule that " all contracts to pay give a right to interest from the time when the principal ought to be paid." But where the amount of the note is sued for, the statute does not provide for any increase of the deposit to secure future assessments, by reason of its being changed from a note to cash. On the contrary, the system on which the assessments are made, and the balance of the note or money ultimately returned, precludes the idea that interest is chargeable on the whole note.

The amount, therefore, which the plaintiff was entitled to recover in this case, was the whole amount of the note as it stood reduced by the payment of previous assessments thereon, without interest. This, under the theory of the act, places in the treasury the exact sum in money for which the note stood as security, out of which future assessments of losses and expenses may be taken. Although the *basis* of all assessments, so long as the right to make them remains, continues to be " the original amount of the deposit note," yet the fund which secures them, whether in note or money, is only the amount remaining after crediting assessments already paid. Hence " the whole amount of the deposit note" which the directors in case of default are authorized by the 10th section to sue for and recover, should be held to be the actual amount for which the note continues to stand as security.

The amount of the interest, in this case, is found and

stated separately. There is no difficulty in correcting the error if the plaintiff elects to deduct that amount from the judgment.

There should be a new trial ordered, unless the plaintiff shall stipulate to deduct the interest, and take judgment for the unpaid balance of the note.

Ordered accordingly.

MARVIN, P. J. and GROVER, J. concurred.

HOYT, J., having been a member of the company, took no part in the decision.

[ERIE GENERAL TERM, September 1, 1862. *Marvin, Davis* and *Grover*, Justices.]